UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:16-CV-188-TBR

NICHOLAS ROESNER,												PLAINTIFF

v.

MCCRACKEN COUNTY JAIL, et. al.,										DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court upon two motions: First, Defendants Melanie Tynes and Greg Kingston have filed a Motion for Summary Judgment. [DN 33.] Plaintiff Nicholas Roesner has responded, [DN 36], and Tynes and Kingston have replied. [DN 37.] Second, Defendants Bill Adams and McCracken County, Kentucky have filed a Motion for Summary Judgment. [DN 34.] Adams and McCracken County construed Roesner's above response as addressing their Motion as well, and so they have replied. [DN 38.] This matter is now ripe for adjudication. Because Roesner failed to exhaust his administrative remedies, Defendants are entitled to summary judgment as a matter of law, and their Motions, [DN 33; DN 34], are **GRANTED.**

**I. BACKGROUND**

This case arises out of Nicholas Roesner's claims against Melanie Tynes, Greg Kingston, Bill Adams, and McCracken County, Kentucky. Roesner claims that, while incarcerated at the McCracken County Jail from May 2015 to December 2016, his Eighth Amendment right to be free from cruel and unusual punishment was violated when he allegedly received inadequate medical treatment for a shoulder injury he sustained while playing basketball at the jail. Tynes is a licensed practical nurse (LPN), and Kingston is a nurse practitioner, and both work for

Advanced Correctional Healthcare, Inc., a company that provides medical care to inmates at this facility under contract. Adams is the McCracken County Jailer.

Roesner named Tynes and Kingston, alleging that they inflicted cruel and unusual punishment on him, in violation of the Eighth Amendment, by failing to provide him with adequate medical care and by failing to take his shoulder injury seriously. Roesner named Adams as a defendant and alleges that Adams "violated [Roesner's] rights to proper medical care due to the fact that he is the…jailer at the McCracken County Jail and through countless administrative grievances he should have been made aware of [Roesner's] condition…." [DN 1, at 4.] Roesner goes on to allege that Adams "inflicted cruel and unusual punishment upon [Roesner] by not making sure that [Roesner] had proper medical care while in the jail…." [*Id.* at 5.]

Roesner's shoulder injury occurred in the middle of May 2016. On June 12, 2016, Roesner filled out a medical request regarding the injury and was seen for treatment on June 15. At the conclusion of this examination, Roesner was instructed that his shoulder was inflamed and he was prescribed ibuprofen to treat it. A week later, on June 23, Roesner filed another medical request form and was seen again. This time, Kingston was present and he ordered an x-ray of Roesner's shoulder, which, according to Kingston, returned normal. Thereafter, Roesner filed six successive inmate grievances regarding what he alleges was inadequate medical care:

Grievance One: Roesner filed his first grievance on July 5, 2016. In it, Roesner claimed to be in serious pain, which was not alleviated by the ibuprofen he was prescribed. In Grievance One, he claimed to have sent three medical requests regarding his shoulder and the x-ray scan he had taken, and described his symptoms as having gotten worse.

Grievance Two: Roesner filed his second grievance on July 15, 2016. In it, Roesner again claimed that he was "being denied proper medical care," and that "something very serious [wa]s wrong with [his] left shoulder." He went on to describe the limited mobility in his left shoulder and the perceived lack of concern from the medical staff. The Grievance Two Response noted that Roesner was taken to the medical area and given an x-ray weeks before and that the results of the x-ray were negative.

Grievance Three: Roesner filed his third grievance on July 20, 2016. In this grievance, Roesner claimed that he had, at this time, filled out four "sick calls," or doctor requests, and that when he was seen by Kingston, nothing of substance was done to actually examine his shoulder. He stated further that he was instructed to purchase ibuprofen with funds from his inmate account if the pain persisted.

Between the time that Roesner filed Grievance Three and Grievance Four, he wrote a letter to the Kentucky Department of Corrections again alleging that he was being denied adequate medical care. Additionally, on July 22, Roesner was treated by a different nurse practitioner at the Orthopaedic Institute of Western Kentucky, during which time he was given an MRI.

Grievance Four: Roesner filed his fourth grievance on August 6, 2016, complaining that he had not received the results from his MRI,[1] and that his symptoms had gotten worse. Specifically, Roesner noted that he was in constant pain and that his left arm had begun to turn purple. He also complained that he was not being given the prescription medication that the doctor at the Orthopaedic Institute had given him.[2] Roesner was again advised to purchase ibuprofen. It appears from the record that the only time both Tynes and Roesner were in an

---

[1] The MRI results showed no tears.
[2] Defendants allege that the medication in question, Diclofenac, is not approved for use by prisoners.

examination room at the McCracken County Jail at the same time was on September 13, 2016, when Kingston was going over the MRI results with Roesner.

Grievance Five: Roesner filed his fifth grievance on October 4, 2016, again claiming that he was being denied proper medical care for his left shoulder and arm.

Grievance Six: Roesner filed his sixth grievance on October 18, 2016. This was Roesner's final grievance before he was transferred to the Ballard County Detention Center ("BCDC") on December 19, 2016. In it, Roesner reiterates the inadequate medical care he was allegedly receiving.

Upon being transferred to BCDC, Roesner did not seek out any medical treatment for his alleged shoulder injury. [Roesner Dep., at 113-15.] When he left BCDC for the Roederer Correctional Complex, he did not seek medical treatment there either. [*Id.*]

## II. LEGAL STANDARD

Summary Judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Importantly, "not every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). Rather, the test is whether the party bearing the proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 796, 799 (6th Cir. 1996). This means that the plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for plaintiff. *Id.* Mere speculation will not suffice, because "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). In

4

determining whether summary judgment is warranted, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Prison Litigation Reform Act

The Prison Litigation Reform Act of 1995 ("PLRA") mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined by any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This means that, before prisoners may seek legal redress for alleged violations of their Federal rights in court, it is mandatory that they exhaust all administrative remedies first. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Importantly, "the PLRA exhaustion requirement requires proper exhaustion," meaning "compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 91-93 (2006). Lastly, complete exhaustion of administrative remedies is required even where the administrative process available to the prisoner cannot provide him with the precise relief he seeks. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

> At the McCracken County Jail:
>
> Any prisoner shall be allowed to file a grievance at such time as the prisoner believes he or she has been subject to abuse, harassment, abridgment of civil rights or denied privileges specified in the posted rules. (Grievances must be restricted to incidents which occur while the prisoner is in custody of the center.) No prisoner shall fear against reprisal for initiating grievance procedure in an attempt to resolve legitimate complaints.

This language, from 501 KAR 3:140, § 7, is posted throughout the prison. [*See* DN 33-1, at 2; DN 34-2, at 1.] In addition to this general description of the jail's grievance policy, there are also detailed procedures, which lay out the manner in which prisoners should go about filing such grievances. This includes how to fill out grievance forms, what they should contain and, of importance to the instant Motions, the appeals process. Specifically, the Jail's grievance policy provides the following: "If not satisfied with the disposition of the grievance by the Chief Deputy, the prisoner may set forth his grievance in writing and his objection to the disposition of the grievance. The prisoner's appeal will then be forwarded to the Jailer. If no answer is forwarded within ten (10) days then the grievance can be presumed to be denied."

### B. Analysis

All four Defendants present, as their principal argument in favor of this Court granting them summary judgment, the grievance policy of the McCracken County Jail. They argue that, because Roesner's only claim is that while incarcerated there he was subjected to cruel and unusual punishment under the Eighth Amendment because he was denied adequate health care, and Roesner failed to exhaust his administrative remedies with respect to that claim, summary judgment is appropriate. The Court agrees. Roesner failed to exhaust his administrative remedies and, as such, did not fully comply with the mandates of 42 U.S.C. § 1997e(a), and the Court must grant summary judgment in favor of all Defendants.

In Roesner's deposition, he indicated that he has seen and read the Jail's grievance policy. [DN 39, at 39-40.] This shows that Roesner understood, at least at a baseline level, the means by which he could seek redress for the medical treatment he perceived to be inadequate. Roesner filed six separate grievances, on July 5, July 15, July 20, August 6, October 4, and October 18. However, by Roesner's own admission, he never appealed any of them in

accordance with Jail policy. When Roesner was deposed, he was asked specifically about each of the six grievances he filed relating to the treatment he was receiving for his left shoulder and arm, and he indicated on the record that he had not gone through the appeals process for any of the six. [*See* Roesner Dep., at 39-40; 56-57; 65-66; 83; 91; 103; 105-06.]

In his Response to Defendants' Motions for Summary Judgment, Roesner references the six grievances he filed, as well as the letter that he wrote to the Kentucky Department of Corrections. He states that "he did exhaust his state remedies," but that he did so only "as far as he had knowledge as to any procedures." [DN 36, at 1.] But while Roesner claims exhaustion of administrative remedies, the plain language of the Jail's grievance procedures, coupled with Roesner's own admission that he did not complete the appeals process for any of the six grievances, shows that this is an incorrect statement. Additionally, "a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony." *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997). Here, Roesner's contradictory statement appears not in an affidavit, but in a Response to a Motion for Summary Judgment. However, the principle holds true, and his new statement claiming that he exhausted his administrative remedies cannot, in and of itself, create a genuine dispute of material fact, because of his conflicting deposition testimony from May.

Roesner claims next that "there are no posted polic[ies] and procedures that are readily available to the inmates," and that "no inmate handbooks are passed out which give[] instructions as to the grievance policy and procedures." [*Id.*] Roesner appears to contend that this should relieve him of strict compliance with the demands of § 1997e(a). However, three months earlier and by his own admission during his deposition, Roesner admitted to having seen and

read the Jail's grievance policy. Moreover, as the Supreme Court made plain in *Porter v. Nussle*, 534 U.S. 516, 988 (2002), the exhaustion requirement of § 1997e(a) is mandatory, and not discretionary with the Court based upon the degree of actual knowledge Roesner may or may not have had while going through the process. As such, this Court must grant summary judgment in favor of Tynes, Kingston, Adams, and McCracken County, Kentucky on the basis that Roesner failed to exhaust his administrative remedies. Due to the fact that Roesner's failure to exhaust his remedies results in judgment as a matter of law in favor of all four Defendants, the Court need not analyze the merits of Roesner's Eighth Amendment claim.

## IV. CONCLUSION

For the reasons stated herein, **IT IS HEREBY ORDERED** as follows:

1) Defendants Tynes' and Kingston's Motion for Summary Judgment, [DN 33], is **GRANTED.**

2) Defendants Adams' and McCracken County, Kentucky's Motion for Summary Judgment, [DN 34], is **GRANTED.**

The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

cc: Nicholas Roesner, # 283838, *pro se* Plaintiff
Roederer Correctional Complex
P.O. Box 69
LaGrange, KY 40031

cc: Counsel of Record